J-A02042-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NICHOLAS BENJAMIN ORTIZ | : | |
| | : | |
| Appellant | : | No. 574 MDA 2023 |

Appeal from the Judgment of Sentence Entered March 15, 2023
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-MD-0002911-2022

BEFORE:  NICHOLS, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:          **FILED: MARCH 11, 2024**

Nicholas Ortiz ("Ortiz") appeals from the judgment of sentence following his conviction of indirect criminal contempt.[1]  Ortiz's counsel ("Counsel") has filed a petition to withdraw and an accompanying brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We affirm and grant Counsel's petition to withdraw.

At trial, the Commonwealth introduced the following evidence.  In September 2022, C.M. sought a protection from abuse order ("PFA") against Ortiz, her former boyfriend.  ***See*** N.T., 3/15/23, at 9-10.  After a hearing, at which Ortiz appeared *pro se*, the court issued a three-year PFA barring Ortiz from any contact with C.M.  ***See*** N.T., 3/15/23, at 10.

---

[1] ***See*** 23 Pa.C.S.A. § 6114.

Less than two months later, on November 7, 2022, C.M. received a series of calls and text messages from an unfamiliar phone number. *See id*. at 15-16. C.M. testified she did not answer the calls for fear Ortiz was trying to contact her. *See id* at 14. She testified Ortiz previously contacted her via WhatsApp, an anonymous texting app.[2] *See id*. Between 9:45 a.m. and 10:00 a.m. that day, C.M. received a series of texts from a phone number she did not recognize but believed was a WhatsApp number. *See* N.T., 3/15/23, at 11. C.M. testified she received a text message that said, "I miss you." She then testified:

> I said, "who is this?" He said, "you know who this is." And then I responded, "I actually don't. Can you enlighten me?" Then he said, :I heard you have a new boyfriend," and I responded, "I do." Then [Ortiz] said, "After how long we were together it's crazy how you found someone new. He doesn't compare to what we had." And I responded, "**Nick**, do not ever contact me again."

*See id*. at 12 (quotation marks added, punctuation corrected, emphasis added). C.M. testified the conversation concluded as follows:

> I added on to, "Nick, do not contact me. . . . [H]e doesn't compare because he's better in every way. . . ." And then he responded, "Yeah. Right." And with that I responded, "You made your bed, lay in it." Then he responded, "You'll come back one day."

*See id*. at 12-13. C.M. testified she believed Ortiz sent the text messages because she had a two-year relationship with Ortiz, her longest, and the sender did not deny that he was "Nick" when she addressed the sender using

---

[2] The record does not specify whether that previous communication was via phone call or text message.

his name. *See id*. at 13, 16-17. C.M. reported her receipt of the texts to Officer Andy Mallette. *See id*. at 5-6. Officer Mallette ran a registration check on the phone number used to text C.M. and determined it was unregistered. *See id*. at 5-7.

At trial, Ortiz presented his current girlfriend's testimony that she, he, and her two children were together on the morning of the text conversation, and one of her children was using Ortiz's phone continuously from 9:20 a.m. to 10:00 a.m. *See id*. at 19-22, 24-25.

The trial court convicted Ortiz of indirect criminal contempt. It concluded Ortiz texted C.M. and concealed his identity by using an anonymous texting app he had used before. *See id*. at 30-33.[3] The court imposed a sentence of six months of probation. *See id*. at 34. Ortiz timely appealed, and counsel filed a Pa.R.A.P. 1925(c)(4) statement of intent to withdraw, in lieu of a Pa.R.A.P. 1925(b) statement, and an *Anders* brief.

When presented with an *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw. *See Commonwealth v. Daniels*, 999 A.2d 590, 593 (Pa. Super. 2010). Counsel who believes an appeal is frivolous and seeks to withdraw from representation must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has

---

[3] The trial court declined to credit Ortiz's girlfriend's testimony. *See id*. at 33-34.

determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

*Commonwealth v. Tejada*, 176 A.3d 355, 359 (Pa. Super. 2017). *See also* *Commonwealth v. Cartrette*, 83 A.3d 1030 (Pa. Super. 2013) (*en banc*). In *Santiago*, our Supreme Court addressed the second requirement of *Anders*, *i.e.*, the contents of an *Anders* brief, and required that the brief:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. Once counsel has satisfied the *Anders* requirements, this Court then has a duty to conduct its own review of the trial court's proceedings and make an independent determination whether the appeal is wholly frivolous. *See Commonwealth v. Edwards*, 906 A.2d 1225, 1228 (Pa. Super. 2006).

Here, Counsel avers in his petition to withdraw he reviewed the entire record and concluded the appeal is frivolous. *See* Ortiz's Brief at 8. Counsel further avers he sent a copy of the petition to withdraw and the *Anders* brief to Ortiz, as well as information explaining Ortiz's right to retain private counsel

or proceed *pro se* and raise any other argument Ortiz sees as meritorious. *See* Ortiz's Brief at 8.

Counsel's **Anders** brief includes a summary of the facts and procedural history of the case, identifies the issues that could arguably support Ortiz's appeal, and Counsel's analysis of why the issues lack merit, with citations to the record and legal authority. **See id**. We conclude Counsel has complied with the requirements of the **Anders** procedure. Accordingly, we will conduct an independent review of the record to determine whether this appeal is wholly frivolous.

Counsel raises the following issues for our review:

I. Whether there was sufficient evidence to establish [] Ortiz committed indirect criminal contempt?

II. Whether the text messages that formed the basis of the [indirect criminal contempt] charge were properly authenticated?

*See* Ortiz's Brief at 4.

Ortiz's first issue implicates the sufficiency of the evidence of indirect criminal contempt.

In considering a sufficiency of the evidence challenge, the Superior Court reviews evidence and all reasonable inferences from the evidence as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not

weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brumbaugh*, 932 A.2d 108, 109-10 (Pa. Super. 2007) (citations and quotation marks omitted).

"[M]uch reliance is given to the discretion of the trial judge[]" when reviewing a conviction for contempt. *Commonwealth v. Boyer*, 282 A.3d 1161, 1167 (Pa. Super. 2022) (citations omitted). Because of this, our review is limited to whether the facts support the trial court's decision. *See Boyer*, 282 A.3d at 1167. A reversal is only appropriate "where there has been a plain abuse of discretion." *Id*.

Indirect criminal contempt occurs when a person violates an order or decree given by a court outside of the presence of the court. *See Boyer*, 282 A.3d at 1163. To establish indirect criminal contempt, the Commonwealth must prove four elements: (1) that the court's order was sufficiently definite, clear, and specific, and left no doubt in the contemnor's mind as to the prohibited conduct; (2) the contemnor had notice of the order; (3) the act

constituting the violation was volitional, not accidental; and (4) the contemnor acted with wrongful intent. *See Brumbaugh*, 932 A.2d at 110.

Here, Counsel states he "considered raising a claim there was insufficient evidence to convict [] Ortiz of indirect criminal contempt[,]" but concluded, "upon review of the record, any argument to that effect would lack arguable merit." *Anders'* Brief at 9. Counsel explained:

> the [PFA o]rder unambiguously prohibited [] Ortiz from having any contact whatsoever with [C.M.]. The order was clear and left no doubt that all communications were prohibited. . . . The element of volition was met where the [trial] court found that the messages were indeed sent by [] Ortiz. . . . Regarding the element of wrongful intent, [the Superior C]ourt has determined that a clear and intentional violation of an unambiguous PFA order can allow the inference of wrongful intent.

*Id*. at 10-11 (record citation omitted)

The trial court agreed; it specifically credited the testimony of C.M., while finding the testimony of Ortiz's girlfriend "too convenient and self-serving." Trial Court Opinion, 5/19/23, at 3 (unnumbered). The court concluded, "the only reasonable explanation" for the events was Ortiz sent the messages. *Id*.

We find no error in the trial court's ruling. The evidence showed Ortiz knew about the PFA and intentionally violated it by texting C.M. *See* N.T., 3/15/23, at 31-34. The trial court, sitting as the finder-of-fact, credited the Commonwealth's version of the events, while disbelieving Ortiz's version. *See* Trial Court Opinion, 5/19/23, at 3. "This Court will defer to the credibility determinations of the trial court as to witnesses who appeared before it[, and

it] is well-settled that the trier[-]of[-]fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Juray*, 275 A.3d 1037, 1046 (Pa. Super. 2022) (citation omitted). Therefore, we agree Ortiz's sufficiency claim is wholly frivolous.

In his second issue, Ortiz challenges the authentication of the text messages. Before reviewing the merits of Ortiz's claim, we must consider when the claim is preserved for appellate review. Issues not raised in the trial court are waived and cannot be raised for the first time on appeal *See* Pa.R.A.P. 302(a); *see also Commonwealth v. Ramos*, 231 A.3d 955, 957 (Pa. Super. 2020) (stating "[i]t is settled that an appellant's failure to raise a contemporaneous objection to evidence at trial waives that claim on appeal") (internal quotation marks and citations omitted). Because Ortiz failed to object to the admission of this evidence at trial, his second issue is waived. *See id*.

Finally, our independent review of the record reveals no arguably meritorious issues Ortiz could raise on appeal. *See Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*). Accordingly, we grant Counsel's application to withdraw and affirm Ortiz's judgment of sentence.

Application to withdraw from representation granted. Judgment of sentence affirmed.

- 8 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 03/11/2024