2020 PA Super 96

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ANGEL RAMOS :
:
Appellant : No. 1558 EDA 2018

Appeal from the Judgment of Sentence April 20, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0011817-2016

BEFORE: LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

OPINION BY LAZARUS, J.: **FILED APRIL 15, 2020**

Angel Ramos appeals from his judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after a jury convicted him of corruption of a minor,[1] sexual assault,[2] and unlawful contact with a minor.[3] Upon careful review, we affirm.

On December 3, 1999, Ramos lured 16-year-old G.G. into his vehicle, and then sexually assaulted her at knifepoint. Ramos forced G.G. to engage in oral, vaginal, and anal sex. After the assault, G.G. returned home and told her family what happened. She was transported to Episcopal Hospital where

---

[1] 18 Pa.C.S. § 6301(a)(1).

[2] 18 Pa.C.S. § 3124.1.

[3] 18 Pa.C.S. § 6318(a)(1).

she received medical treatment. A rape kit was collected that included DNA samples.

In 2010, Ramos was identified as G.G.'s assailant by comparing DNA in the rape kit to DNA samples collected from Ramos when he was convicted of another, unrelated sexual assault. Investigators interviewed G.G. on June 30, 2016, and showed her a photograph array of six men, one of whom was Ramos. The photograph was taken from an unrelated arrest that occurred on November 30, 2000. G.G. identified the picture of Ramos as the one that looked the most like her attacker, but she was not certain of the identification. Ramos was arrested on November 6, 2016. At the preliminary hearing, G.G. unequivocally identified Ramos.

Ramos's trial commenced on January 24, 2018. During the trial, Detective Peter Marcellino mentioned the photograph shown to G.G. was from a prior arrest of Ramos. Also during the trial, Detective James Owens stated, "I believe the complainant." N.T. Trial, 1/25/18, at 116. Ramos objected to Detective Owens's comment. The court sustained the objection and directed the jury to disregard the remark. After the jury was excused for the day, Ramos requested a mistrial and the court denied the request. A jury found Ramos guilty of the above-mentioned offenses. On April 20, 2018, the trial court sentenced Ramos to an aggregate sentence of 12½-25 years' incarceration.

Ramos filed a motion to modify sentence arguing that the court should have run his sentence concurrent to another sentence he was currently serving where there were several mitigating factors, including his age, ill health and "hope of . . . eventual rehabilitation." Motion to Modify Sentence, 4/27/18, at 2. The court denied the motion on May 9, 2018. This timely appeal follows.

Ramos raises the following issues on appeal:

1. Did not the [trial] court err and deprive [Ramos] of due process and his right to a fair trial, by denying a defense motion for a mistrial due to improper evidence heard by the jury that indicated [Ramos's] prior criminal activity, after Detective Marcellino stated the "date of arrest" in response to the District Attorney's question, what was the date of [Ramos's] photograph used in the photographic array?

2. Did not the [trial] court err and deprive [Ramos] of due process and his right to a fair trial, by denying a defense motion for a mistrial after Detective Owens said in front of the jury, that not getting in contact with the complainant's girlfriend did not change the outcome of the case because he believed that he had the right guy, and he believed the complainant?

Appellant's Brief, at 3.

With regard to Ramos's first issue concerning Detective Marcellino's comment, the Commonwealth argues that Ramos failed to timely object to the officer's comment, and, thus, has waived his claim. Appellee's Brief, at 6. It is settled that an appellant's "failure to raise a contemporaneous objection to evidence at trial waives that claim on appeal." ***Commonwealth v. Radecki***, 180 A.3d 441, 455 (Pa. Super. 2018) (quoting ***Commonwealth v. Thoeun Tha***, 64 A.3d 704, 713 (Pa. Super. 2013)); ***see also*** Pa.R.E. 103(a)

(providing party may only claim error regarding admission or exclusion of evidence if he or she makes timely objection on record); **Commonwealth v. Baumhammers**, 960 A.2d 59, 73 (Pa. 2008) (to preserve issue for appeal, party must make timely and specific objection to ensure trial court has opportunity to correct alleged error).

Ramos's counsel claimed he made a strategic decision to not immediately object in order to avoid highlighting the prejudicial reference. N.T. Trial, 1/26/18, at 14. Ramos waited to raise the issue during his motion for a mistrial. The court stated that if Ramos "had objected[,] I would have responded with a curative instruction, but in so doing . . . it could have highlighted the issue." **Id.** The court decided to remedy the prejudice by adding language to the final jury instruction on the presumption of innocence. **Id.** at 15.

While Ramos's objection was not immediate, he did raise the issue in his motion for mistrial and gave the trial court sufficient opportunity to correct the alleged error. **See Baumhammers**, 960 A.2d at 73. However, we conclude that Ramos later waived this claim when he requested that the trial court not provide a curative instruction in its charge to the jury.

When the court first ruled on Detective Marcellino's comment, it decided to provide a curative instruction during its charge to the jury. N.T. Trial, 1/26/18, at 15. However, prior to the charge to the jury, Ramos's counsel requested that the court not provide a curative instruction. **Id.** at 88. The

court confirmed that decision with Ramos and removed the curative instruction from its jury charge. *Id.* at 88-89.

Even if witness testimony causes prejudice, adequate instructions may be able to cure the error. *Commonwealth v. Maloney*, 365 A.2d 1237, 1241 (Pa. 1976). However, defense counsel may decide to forego curative instructions to avoid drawing attention to the prejudicial remark. *See Commonwealth v. Johnson*, 668 A.2d 97, 104 (Pa. 1995) (finding no issue when court did not provide curative instruction after defendant refused offer to provide curative instruction). "When counsel chooses to refuse appropriate curative instructions for this legitimate tactical reason, the defense may not plead prejudice on appeal." *Commonwealth v. Miller*, 481 A.2d 1221, 1223 (Pa. Super. 1984) (citation omitted). Moreover, if a curative instruction could allay any prejudice, and appellant chose to forego any such instruction, appellant may not plead prejudice on appeal. *See Commonwealth v. Quartman*, 385 A.2d 429, 432 (Pa. Super. 1978) ("Electing against [a curative instruction] at trial, appellant may not now complain of prejudicial error.).

Our review of the transcript reveals the following exchange:

Q: The one final question I have for you is when you look at the chart[,] what was the date of the photograph that you used for Mr. Ramos?

A: They list the date of arrest here and the date of arrest was November 30th of 2000.

Ms. Fischer: I have no further questions.

NT. Trial, 1/25/18, at 75.

Here, the Commonwealth questioned Detective Marcellino to explain G.G.'s hesitation in identifying Ramos from the photograph. *See* N.T. Trial, 1/25/18, at 73-74. The Commonwealth ceased direct examination immediately after Detective Marcellino made the comment and never again referenced the arrest. *Id.* at 75. As the Commonwealth did not elicit the comment, nor ever reference it, any prejudice could have been cured with an appropriate instruction. *See Commonwealth v. Vazquez*, 617 A.2d 786, 688 (Pa. Super. 1992) (when determining if instruction can cure exposure to improper evidence, court must consider whether Commonwealth intentionally elicited remark, whether Commonwealth exploited remark, and whether answer was response to question).

Because Ramos specifically asked the court not to provide a curative instruction, and a curative instruction could have allayed any prejudice, Ramos may not raise prejudice on appeal. *See Miller*, 481 A.2d 1223; *see also Quartman*, *supra*.

Next, Ramos argues that the trial court abused its discretion when it denied his motion for a mistrial because Detective Owens improperly vouched for G.G's credibility. Appellant's Brief, at 15. Vouching is a "form of prosecutorial misconduct occurring when a prosecutor 'places the government's prestige behind a witness through personal assurances as to the witness's truthfulness, and when it suggests that information not before

the jury supports the witness's testimony.'" ***Commonwealth v. Lawrence***, 165 A.3d 34, 42 (Pa. Super. 2017) (quoting ***Commonwealth v. Reid***, 99 A.3d 427, 447 (Pa. 2014)). "Improper bolstering or vouching for a government witness occurs where the prosecutor assures the jury that the witness is credible, and such assurance is based on either the prosecutor's personal knowledge or other information not contained in the record." ***Commonwealth v. Chmiel***, 30 A.3d 1111, 1180 (Pa. 2011) (citation omitted). Furthermore, vouching can occur when the prosecutor "elicit[s] improper comments from a Commonwealth witness." ***Commonwealth v. Tedford***, 960 A.2d 1, 32 (Pa. 2008).[4]

Assistant District Attorney Elizabeth Fischer questioned Detective Owens regarding his efforts to reconstruct cold case records and locate Erica Casper, a friend of G.G.'s mother, who was present when G.G. returned from the assault. During re-direct examination, the following exchange occurred between Detective James Owens and Assistant District Attorney Fischer:

> Q: Not getting into contact with Erica Casper, did that [prevent] you from moving forward with your investigation?
>
> A: It didn't change the outcome of the case, no.
>
> Q: Why?
>
> A: I still believe I had the right guy.
>
> [ADA] Fischer: I have no more questions.

---

[4] We can find no case in which this Court has found improper vouching when a witness made an unsolicited remark.

The Witness:  And I believe the complainant.

N.T. Trial, 1/25/18, at 116.  Ramos objected in response to the last statement and moved to strike.  **_Id._**  The court sustained the objection and directed the jury to disregard Detective Owens's opinion that he believed the complainant as completely irrelevant.  **_Id._**  Where, the court instructs the jury to disregard the statement we "presume that the jury will follow the instructions of the court."  **_Commonwealth v. Huggins_**, 68 A.3d 962, 973-74 (Pa. Super. 2013).

First, we note that ADA Fischer did not make the contested statement. Furthermore, ADA Fischer did not elicit the improper comments from Detective Owens.  Detective Owens voluntarily made the contested statement after ADA Fischer stated "I have no more questions."  N.T. Trial, 1/25/18, at 116.  As the statement was unsolicited, ADA Fischer did not commit prosecutorial misconduct by vouching.  **_See Tedford_**, 960 A.2d at 32.[5]  Thus, the trial court did not err when it refused to order a mistrial.

Judgment of sentence affirmed.

---

[5] Even if we found the prosecutor elicited the statement, Ramos would still not be entitled to relief.  **_See Commonwealth v. Hernandez_**, 615 A.2d 1337 1341 (Pa. Super. 1992) (finding social worker explaining to jury that she found child abuse case was "indicated" based, in part, on interview with victim and victim's mother, did not unduly bolster credibility of victim).

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 4/15/2020*